UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
LUBBOCK DIVISION

| | | |
|---|---|---|
| ORALIA SHEARS, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | CIVIL ACTION NO. |
| | § | 5:06-CV-263-C |
| | § | |
| MICHAEL J. ASTRUE, | § | |
| Commissioner of Social Security, | § | |
| | § | |
| Defendant. | § | |

**REPORT AND RECOMMENDATION**

Plaintiff Oralia Shears seeks judicial review of a decision of the Commissioner of Social Security denying her application for Supplemental Security Income (SSI). The United States District Judge reassigned this case to the United States Magistrate Judge for all proceedings. Because Shears did not consent to the jurisdiction of the United States Magistrate Judge, pursuant to the order reassigning this case, the undersigned now files this Report and Recommendation and recommends that the District Court affirm the Commissioner's decision.

**I.      Shears' Point of Error**

Shears brings a single point of error. She claims the Administrative Law Judge (ALJ) erred as a matter of law at step three of the sequential disability analysis[1] because he failed

---

[1] The Commissioner considers the applicant's claim under a five-step sequential analysis. 20 C.F.R. § 416.920 (2006); *see Newton v. Apfel*, 209 F.3d 448, 453 (5th Cir. 2000). Under the sequential inquiry, the ALJ decides whether the applicant: (1) is not working in substantial gainful activity; (2) has a severe impairment; (3) has an impairment that meets or equals a listed impairment in Appendix I of the regulations; (4) has an impairment that prevents him from doing past

to find that her mental impairments rendered her disabled under listing 12.04 in the Commissioner's regulations.

## II. Discussion

The claimant bears the burden of providing medical findings that show that her impairment(s) meet or equal each of the specified medical criteria of a listing. To satisfy this burden, the claimant must show that her impairments meet each of the specified criteria of a listing; a claimant will not be presumed disabled under a listing in the Commissioner's regulations unless the medical evidence shows that her impairments and symptoms meet each of the specified criteria of the listing at issue. *See Selders v. Sullivan*, 914 F.2d 614, 619 (5th Cir. 1990) (citing *Sullivan v. Zebley*, 493 U.S. 521, 531 (1990)).

Shears argues her depression meets the criteria for listing 12.04, the listing for affective disorders. 20 C.F.R. part 404, subpart P, appendix 1 § 12.04. Listing 12.04 encompasses impairments that are "[c]haracterized by a disturbance of mood, accompanied by a full or partial manic or depressive syndrome. Mood refers to a prolonged emotion that colors the whole psychic life; it generally involves either depression or elation." *Id.* In order to meet the criteria for listing 12.04, the claimant must show that his impairments meet both the "A" and "B" criteria or the "C" criteria of the listing. Shears claims the evidence demonstrates that her mental impairments meet the "A" and "B" criteria of listing 12.04.

---

relevant work; and (5) has an impairment that prevents him from doing any other work. *Id.* If the ALJ determines at the third step of the analysis that the medical severity of the claimant's impairment meets or equals the criteria of one of the listed impairments in appendix 1 of subpart P in the Commissioner's regulations and that the impairment lasted or can be expected to last at least twelve months, disability is presumed and the evaluation ends in the claimant's favor. 20 C.F.R. § 416.920(d); *see Loza v. Apfel*, 219 F.3d 378, 390 (5th Cir. 2000).

2

Under the "A" criteria, the claimant must show that he suffers from depression and at least four of nine listed attendant symptoms or that he suffers from manic syndrome with certain attendant symptoms or that he suffers from bipolar syndrome with a history of episodic periods of both manic and depressive syndromes. 20 C.F.R. part 404, subpart P, appendix 1 § 12.04(A). Shears claims her impairments met the "A" criteria because she suffers from depression with attendant symptoms. She specifically claims there is evidence that she suffers from the limitations described under subsections (a), (c), (e), (f), (g), and (i).[2] The evidence demonstrates that at varying times Shears experienced at least four of the symptoms listed under the "A" criteria.

The evidence does not show, however, that Shears' mental impairments met the "B" criteria. Under the "B" criteria the evidence must demonstrate that the claimant's mental impairments result in at least two of the following: marked restriction of activities of daily living; marked difficulties in maintaining social functioning; marked difficulties in maintaining concentration, persistence, or pace; or repeated episodes of decompensation. 20 C.F.R. part 404, subpart P, appendix 1 § 12.04(B). Shears claims the evidence shows that she experienced marked restrictions in her activities of daily living and marked difficulties in her social functioning and social interaction. See Pl.'s Appeal Br. 2-3; *compare* Pl.'s Reply Br. 7.

---

[2] These limitations include (a) anhedonia or pervasive loss of interest in almost all activities; (c) sleep disturbance; (e) decreased energy; (f) feelings of guilt or worthlessness; (g) difficulty concentrating or thinking; and (i) hallucinations, delusions, or paranoid thinking.

The term "activities of daily living" is defined as "adaptive activities such as cleaning, shopping, cooking, using public transportation, paying bills, maintaining a residence, caring appropriately for grooming and hygiene, using telephones and directories, and using a post office." 20 C.F.R. pt. 404, subpt. P, app. 1 § 12.00(C)(1). Shears points out that her treating psychiatrist noted that she became confused easily and that her family managed her medications and that she did not cook and that her daughter helped her with the upkeep of her house. (Tr. 452.) She also points to an examination note from her treating psychiatrist in which he noted her report that she spent most of her time at home sitting and watching television and that her husband cooked and her children helped around the house. (Tr. 177.) Shears argues that the medical evidence corroborates her testimony regarding her activities of daily living. Shears testified that a home health aide came to her home and helped her with activities such as cleaning, cooking, and dressing herself and that her husband and children did housework and her husband prepared meals. (Tr. 649-50.)

Under Listing 12.04 the evidence must show that depressive syndrome, manic syndrome, or bipolar syndrome *resulted in* at least two of the "B" criteria. *See* 20 C.F.R. part 404, subpart P, appendix 1 § 12.04(B) (emphasis added). Although Shears may have experienced restrictions in her activities of daily living, the evidence shows that the restrictions were the result of her physical problems rather than her depression. In application documents completed in 2004, Shears indicated that she needed assistance dressing and bathing because of pain and loss of strength on the right side of her body. (Tr. 86.) She also indicated that she was no longer able to cook because she had problems with her balance and

4

falling. (Tr. 76.) In April 2005 Shears reported to a caseworker that she struggles with physical problems which interfered with her daily activities. (Tr. 446.) The caseworker completed an assessment and indicated that there was "low" evidence of "some minor disruptions in self-care and/or other activities" during the past ninety days. (Tr. 445.) On the other hand, the caseworker indicated that Shears could not tend to her daily living needs noting that her physical problems limited her a great deal and wrote that Shears was interested in "being linked to a program where they can clean her house and cook for her." (Tr. 445, 449.) The home health care provider began helping Shears in May 2005. (Tr. 643.)

In conjunction with her testimony regarding the home health care worker, Shears stated that someone had to be there for her when she took a bath because she experienced dizziness. (Tr. 649.) When asked whether she did any of the cooking at her home, Shears testified that she cooked in the past but began falling and had burned her arm; she indicated that she had asked for help and that her doctor was able to obtain help for her in her home beginning in May.[3] (Tr. 650.) Shears' husband testified that his wife did not cook because of the risk that she would burn herself and that he had not seen her fall but had seen bruises on her. (Tr. 651.) He testified that he did not want her home alone because he was afraid she would "fall or get burned or something." (Tr. 652.) The foregoing evidence

---

[3] Shears testified that she cooked in the past but that in 2002 she began falling and burned herself. She stated that "the doctor start sending me, giving me, you know, something so they can go in my house, I couldn't qualify at the time, because it was hard. I been asking for help for a long time and barely until May, they give me that help." (Tr. 650.)

5

demonstrates that Shears experienced restrictions in activities of daily living but that they were the result of her physical limitations rather than her depression. The evidence does not show, as required under Listing 12.04, that Shears experienced marked restrictions in activities of daily living that resulted from her depression.

Although the evidence may support a finding that Shears' depression resulted in difficulties in maintaining social functioning under the "B" criteria, Shears has not presented evidence and the record does not show that she met either of the two remaining "B" criteria. Shears has therefore failed to carry her burden of providing medical findings that would show that her depression met two of the "B" criteria. Thus, she has failed to show that her depression met each of the specified medical criteria of listing 12.04. Her point of error in this appeal must be rejected.

The Commissioner's decision must be affirmed if supported by substantial evidence. *See Masterson v. Barnhart*, 309 F.3d 267, 272 (5th Cir. 2002). The court may not reweigh the evidence, try questions *de novo*, or substitute its judgment for that of the Commissioner; however, the court must scrutinize the entire record to ascertain whether substantial evidence is present to support the Commissioner's findings. *See Hollis v. Bowen*, 837 F.2d 1378, 1383 (5th Cir. 1988) (citation omitted). Substantial evidence is such relevant evidence that a reasonable mind might accept as adequate to support the Commissioner's decision, and if the court finds that the decision is supported by substantial evidence, it is conclusive and must be affirmed. *Id.* A finding of no substantial evidence is appropriate only if no credible evidentiary choices exist to support the decision. *Johnson v. Bowen*, 864 F.2d 340, 343-44

(5th Cir. 1988).

Substantial evidence supports the ALJ's determination that Shears was not disabled. The ALJ determined that despite her impairments, Shears was capable of performing jobs that exist in substantial numbers in the national economy and that involve simple light work with no climbing, crawling, kneeling, or squatting with only occasional stooping and crouching; that can be performed by a person who has a moderate concentration deficit; and that does not require interaction with the general public. (Tr. 24-25.) The evidence shows that during the time period Shears claimed disability she was diagnosed with depression; underwent excision of lipomas[4] from her back and a hysterectomy; and suffered from degenerative joint disease, tendonitis in her right shoulder, and right bicep tenosynovitis. (Tr. 150, 155-56, 214-215, 304, 485, 595-601.) Although Shears' treating psychiatrist described her depression as "severe," he also described her depression as "moderate" and "mild" and indicated on numerous occasions that she suffered from mild to less than moderate symptoms. (*See*, *e.g.*, Tr. 182, 452, 459, 488, 492, 548, 550, 552.) In regard to Shears' physical complaints, she underwent numerous diagnostic tests with normal findings. (Tr. 215, 310, 337, 591, 603, 615.) In addition, Shears' physicians indicated she was capable of performing light work activity. (Tr. 282, 296, 325, 416-17, 433.)

## III.   Recommendation

Based on the foregoing discussion of the issues, evidence and the law, this court

---

[4] A lipoma is a benign neoplasm of tissue composed of mature fat cells. STEDMAN'S MEDICAL DICTIONARY 1021 (27th ed. 2000).

recommends that the United States District Court affirm the Commissioner's decision and dismiss Shears' appeal with prejudice.

## IV.    Right to Object

Pursuant to 28 U.S.C. § 636(b)(1), any party has the right to serve and file written objections to the Report and Recommendation within ten days after being served with a copy of this document. The filing of objections is necessary to obtain de novo review by the United States District Court.  A party's failure to file written objections within ten days shall bar such a party, except upon grounds of plain error, from attacking on appeal the factual findings and legal conclusions accepted by the district court.  *Douglass v. United Servs. Auto Ass'n*, 79 F.3d 1415, 1429 (5th Cir. 1996) (en banc).

Dated:   June 11, 2007.

_____
NANCY M. KOENIG
United States Magistrate Judge